IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

GEORGE E. JOHNSON                                                                                           PLAINTIFF

v.                                              No. 4:14CV00471 JLH

DEPARTMENT OF DEFENSE,
SECRETARY OF THE ARMY                                                                               DEFENDANT

## OPINION AND ORDER

George Johnson is seeking judicial review of a decision by the Army Board for Correction of Military Records denying his request that his military records be corrected to state that he was injured in the line of duty. Johnson is seeking to have this Court overturn the decision by the Board, remand the case with instructions that the Board find his injuries were in the line of duty, order the Board to consider certain evidence, and declare that his rights were violated. Both parties agree that the Tucker Act does not apply here. Documents #18 at 2 and #19 at 3. For reasons that will be explained, this Court upholds the Board's decision.

Johnson entered the Arkansas National Guard on July 11, 1982. R. 121. He was a food service specialist and was promoted to the rank of Specialist on September 17, 1984. *Id.* On December 27, 1990, Johnson was in a motor vehicle accident unrelated to his military service. R. 50. As a result of the accident, he had pain in his neck, left ankle and knee, and his lower back. *Id.* Johnson received treatment for the injuries at Arkansas Primary Care Clinics. R. 49-56. The documentation from the clinic attributes the injuries to the motor vehicle accident. *Id.*

On December 29, 1990, Johnson reported for military drill at his Arkansas National Guard Unit. R. 29. There is no record that he reported for drill thereafter. *See id.* Johnson claims that on December 29 he fell as he was walking to his car carrying his military equipment and backpack to report for his military drill. Document #17 at 1; R. 15. Johnson states that he reported the fall and

the aggravation it caused to his motor vehicle related injuries to Captain Barbara Johnson who "was supposed to have completed a 'line of duty' investigation." R. 15 (emphasis in original).

On January 24, 1991, Johnson was evaluated by the Troop Medical Clinic. R. 33. He was evaluated for pain in his left knee and ankle, neck, and lower back which were "all painful since 27 Dec 90 when [patient] was in [motor vehicle accident]." *Id.* Johnson's sick leave slip also cites these injuries and the auto accident. R. 34. His physical profile was "no duty, use of wheelchair." R. 35. On February 20, 1991, Johnson received another sick slip citing the same injuries for which he was under the care of a doctor and that they were the result of the auto accident. R. 36. The line for answering whether the injury was in the line of duty is filled in with "no." *Id.* Johnson's physical profile from March 10, 1991, states under his medical condition: "headaches, neck pain, lower back pain, [and] ankle pain ([motor vehicle accident] Dec 90)." R. 59.

On April 24, 1991, Dr. Harold Chakales wrote that Johnson had residuals of cervical spine strain which "disqualifies him from participating in active military duty and [Dr. Chakales] would recommend that he be retired from the active military service." R. 39. Dr. Derek Lewis wrote a letter on March 8, 1991, stating that Johnson was under his care "for injuries sustained in a motor vehicle accident." R. 68. May 4, 1991, a medical evaluation board found that Johnson did "not meet medical fitness standards" and that "[s]eparation proceedings should be initiated immediately." R. 40.

Johnson was honorably discharged on August 7, 1991, at the end of his service. R. 42. On August 19, 1991, Johnson's commanding officer requested the discharge be based on a medical separation. R. 44. A personnel action was signed on August 19, 1991, stating that Johnson was "[m]edically unfit for retention standards." R. 46.

On October 20, 2008, Johnson requested a correction of his military record to state that he was injured in the line of duty and that he should receive a medical payout and disability rating. R. 23.  An application for such a correction must be made within three years after discovery of the error or injustice.  10 U.S.C. § 1552(b).  The Army Board for Correction of Military Records excused this time requirement in the interests of justice in accordance with 10 U.S.C. § 1552(b).  R. 7-8.  The Board considered Johnson's request for line of duty determination for his injuries, incapacitation pay, medical pay out, and a disability rating, denying the request on the merits.  R. 7.

Earnest Dukes, a fellow Arkansas National Guard member, wrote a letter supporting Johnson's request.  R. 30.  The letter is dated October 18, 2008, and states that on December 29, 1990, Dukes saw Johnson carrying his duffle bag at the armory.  *Id.*  Johnson had a "painful grimacing facial expression, the duffle bags seem to causing [sic] him pain while carrying them."  *Id.*  Dukes states that he later learned Johnson was in a car accident two days prior and that is why Johnson appeared to be in pain.  *Id.*  Dukes confirmed that Johnson was sent home before the training exercise completed because Johnson was having trouble with it.  *Id.*

Nikita Johnson, Johnson's wife, also wrote a letter in support of Johnson's request.  The letter dated September 30, 2008, states that she "know[s] for certain that the fall George had while carrying his heavy duffle bags en route to military duty on December 29, 1990 aggravated his injuried [sic] weight bearing joints."  R. 31.

The National Guard Bureau, Personnel Division, in consultation with the Chief Surgeon's Division Office, recommended that the Board deny Johnson's requests. R. 19. The recommendation stated that:

> [T]here is no documentation linking the claimant's injury or aggravation of preexisting condition to duties he performed . . . [and] . . . [t]he claimant's spouse is the only person to mention the aggravation of an existing injury, however all military medical documents enclosed in the claim do not mention an aggravation of an existing injury. Department of Defense (DD) Form 689, dated 24 January 1991 and 20 February 1991 both indicate the source of injury to be an auto accident and the form dated 20 February 1991 indicates the injury was not in the line of duty.

*Id.*

The Board denied Johnson's request for a correction. R. 11. The Board stated that there was no record of Johnson's fall on December 29, 1990. *Id.* The Board noted that Duke's statement did not provide evidence of Johnson's fall but instead stated that Johnson was having trouble performing his duties. *Id.* The Board also stated that both Duke's statement and Mrs. Johnson's statement were made eighteen years after the incident and that neither witnessed the fall. *Id.* Additionally, the Board cited the lack of medical records mentioning an injury or fall and that the medical records attributed the injuries to the motor vehicle accident. *Id.* The Board stated that Johnson's disability "was clearly incurred in the [motor vehicle accident] two days prior to his reporting for duty." *Id.* Only those injuries incurred or aggravated in the line of duty qualify someone for incapacity pay, medical pay out, and a disability rating. *Id.* Therefore, the Board concluded that Johnson had failed to submit evidence that the record was in error or unjust and thus his request was denied. *Id.* Johnson requested that his case be reconsidered, but the Board denied the request. R. 1 and 2.

Judicial review of administrative decisions is governed by the Administrative Procedures Act. 5 U.S.C. § 701 *et seq*. "A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action . . . is entitled to judicial review thereof." 5 U.S.C. § 702. Under the APA, judicial review is limited to the administrative record that was before the agency when it made its decision. *Voyageurs Nat'l Park Ass'n v. Norton*, 381 F.3d 759, 766 (8th Cir. 2004). The reviewing court is not to conduct a de novo trial and substitute its opinion for the agency's

opinion. *Id.* The APA's standard is a deferential and narrow one requiring the petitioner to establish the agency's decision was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A); *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 416, 91 S. Ct. 814, 823-24, 28 L. Ed. 2d 136 (1971).

> A decision is arbitrary and capricious if: "the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise."

*Cent. S.D. Coop. Grazing Dist. v. Sec'y of the U.S. Dep't of Agric.*, 266 F.3d 889, 894 (8th Cir. 2001) (quoting *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43, 103 S. Ct. 2856, 2867, 77 L. Ed. 2d 443 (1983)).

The reviewing court looks at "whether the agency's decision was 'based on consideration of the relevant factors and whether there has been a clear error of judgment.'" *Voyageurs Nat'l Park Ass'n*, 381 F.3d at 763 (quoting *Citizens to Preserve Overton Park, Inc.*, 401 U.S. at 416, 91 S. Ct. at 824). An agency's decision should be upheld if it is supported on any rational basis, especially where it "is acting within its own sphere of expertise." *Id.* When applying the APA to military corrections boards, the standard is whether the agency's decision was arbitrary, capricious, or not based on substantial evidence. *Henry v. U.S. Dep't of Navy*, 77 F.3d 271, 272 (8th Cir. 1996). "Review of a military agency's ruling, moreover, must be extremely deferential because of the confluence of the narrow scope of review under the APA and the military setting." *Id.* The review is limited to whether the decisionmaking process was deficient rather than whether the decision is correct. *Id.* at 272-73. The existence of two possible, but inconsistent decisions does not mean the Board's finding is not supported by substantial evidence. *Id.* at 273.

The Board's decisionmaking process was not deficient, nor was the decision arbitrary, capricious, and unsupported by substantial evidence, so the Board must be affirmed. The evidence presented by Johnson included his medical treatment records, results from his Medical Evaluation Board, a statement from his wife, his Arkansas National Guard Retirement points statement, a statement from another solider, and two newspaper articles. The Board determined that none of the evidence proved that Johnson's injuries were aggravated in the line of duty. The statements supporting that possibility are by Johnson, another soldier, and Johnson's wife, but all three statements were made eighteen years after the event and no one other than Johnson witnessed a fall. And, as the Board stated, no medical record reported a fall. The contemporaneous records only referenced the motor vehicle accident.

Johnson argues that the Board arbitrarily dismissed consideration of the evidence because it, in essence, required an eyewitness to the fall and imposed a statute of limitations. The Board weighed two statements provided eighteen years after the events against the records made by medical and military personal at the time the injuries occurred. The Board gave credence to the records. That is not an arbitrary decision.

## CONCLUSION

The decisionmaking process of the Army Board of Military Corrections was not deficient, nor was the decision arbitrary or capricious. Therefore, the Board's decision is affirmed.

IT IS SO ORDERED this 5th day of May, 2015.

_____
J. LEON HOLMES
UNITED STATES DISTRICT JUDGE